**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**BRUCE BAIRD,**
**Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO. 14-1879**

**DEPARTMENT OF THE INTERIOR,**
**BUREAU OF OCEAN ENERGY MANAGEMENT,**
**Defendant**

**SECTION: "E" (2)**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by the Government ("Defendant").[1] Plaintiff Bruce Baird opposes the motion.[2] The Court has considered the briefs, the record, and the applicable law, and now issues its ruling. For the reasons that follow, the motion for summary judgment is **GRANTED**.

## BACKGROUND

Plaintiff is a marine biologist employed by the Bureau of Ocean Energy Management ("BOEM") and has worked for the federal government for over 24 years.[3] In March 2012, Plaintiff worked for BOEM in the Office of Environment for the Gulf of Mexico Outer Continental Shelf ("OCS") Region.[4] At that time, John Rodi served as the Regional Director of BOEM's Gulf of Mexico OCS Region.[5] Joseph Christopher served as the Regional Supervisor of the Office of Environment within the Gulf of Mexico OCS Region and reported to John Rodi,[6] and Barry Obiol served as the Deputy Regional Supervisor for the Office of Environment, serving directly under Joseph Christopher.[7]

---

[1] R. Doc. 126.
[2] R. Doc. 130.
[3] R. Doc. 76 at 4.
[4] R. Doc. 126-14 at 1, ¶1; R. Doc. 130-2 at 3, ¶1; R. Doc. 126-1 at 6.
[5] R. Doc. 126-1 at 6; R. Doc. 126-2 at 1 (Declaration of John Rodi); R. Doc. 126-4 at 2 (Declaration of Barry Obiol). Rodi retired from federal service in March 2015. R. Doc. 126-2 at 1 (Declaration of John Rodi).
[6] R. Doc. 126-1 at 7; R. Doc. 126-3 at 1 (Declaration of Joseph Christopher).
[7] R. Doc. 126-4 at 1 (Declaration of Barry Obiol).

The Office of Environment has several sections.[8] The Environmental Assessment Section, for example, is responsible for the preparation of Environmental Impact Statements ("EIS") for offshore lease sales.[9] At all relevant times, Gary Goecke served as the Chief of the Environmental Assessment Section and reported directly to Joseph Christopher.[10] In March 2012, Plaintiff worked for Goecke in the Environmental Assessment Section, serving as the lead coordinator on a multi-sale EIS project.[11] Lissa Lyncker served as a co-coordinator with Plaintiff on the project.[12]

Around March 2012, Goecke needed to fill two supervisory positions within the Environmental Assessment Section.[13] The positions were advertised as Supervisory Environmental Specialists to staff two newly created units.[14] Tershara Matthews and Lissa Lyncker, the latter being Plaintiff's co-coordinator on the multi-sale EIS project, were ultimately selected for the positions in April 2012.[15] Plaintiff learned of Lyncker's selection soon thereafter and, though Plaintiff did not apply for one of the positions himself,[16] he was displeased.[17] Plaintiff had worked with Lyncker on the multi-sale EIS and considered her to be a "total failure," believing she had several "shortcomings."[18]

The preceding facts are not disputed. From this point forward, some facts are disputed, but those facts are not material to the Court's decision. The parties agree that,

---

[8] R. Doc. 126-3 at 1 (Declaration of Joseph Christopher).
[9] R. Doc. 126-3 at 1 (Declaration of Joseph Christopher).
[10] R. Doc. 126-5 at 1 (Declaration of Gary Goecke).
[11] R. Doc. 126-1 at 7; R. Doc. 126-3 at 2 (Declaration of Joseph Christopher).
[12] R. Doc. 126-3 at 2 (Declaration of Joseph Christopher); R. Doc. 130 at 2.
[13] R. Doc. 126-14 at 1, ¶1; R. Doc. 130-2 at 3, ¶1; R. Doc. 126-1 at 8; R. Doc. 126-5 at 1 (Declaration of Gary Goecke).
[14] R. Doc. 126-14 at 1, ¶2; R. Doc. 130-2 at 3, ¶2; R. Doc. 126-1 at 8; R. Doc. 126-5 at 1 (Declaration of Gary Goecke).
[15] R. Doc. 126-14 at 1, ¶3; R. Doc. 130-2 at 3, ¶3; R. Doc. 126-1 at 8.
[16] R. Doc. 126-14 at 1, ¶6; R. Doc. 130-2 at 3, ¶6; R. Doc. 126-1 at 8.
[17] R. Doc. 126-14 at 1, ¶¶4–5; R. Doc. 130-2 at 3, ¶¶4–5; R. Doc. 126-1 at 8.
[18] R. Doc. 126-1 at 10; R. Doc. 126-14 at 1–2; R. Doc. 130-2 at 3–4.

soon after Lyncker's selection, Plaintiff confronted Gary Goecke and Joseph Christopher and complained about Lyncker's promotion.[19] The parties dispute Plaintiff's demeanor during those discussions with Goecke and Christopher.[20] On April 23, 2012, Plaintiff confronted Lyncker personally.[21] The parties agree that Plaintiff gave Lyncker "his opinion of her" and "delineated her shortcomings,"[22] but the parties also disagree with respect to Plaintiff's tone and demeanor during this encounter.[23] According to Lyncker, Plaintiff acted "angrily" toward her with "a hostile and aggressive tone,"[24] but Plaintiff maintains he did not yell or use profanity and that no other employees were nearby or heard his conversation with Lyncker.[25]

On April 24, 2012, Lyncker reported her interaction with Plaintiff to Barry Obiol, the Deputy Regional Supervisor in the Office of Environment.[26] Lyncker allegedly told Obiol that she was in "shock" and had become "concerned for her safety because of the degree of Plaintiff's apparent hostility."[27] Plaintiff agrees that Lyncker complained to management that he "had created a hostile work environment."[28] After hearing Lyncker's concerns, Obiol requested that both Lyncker and Plaintiff provide written statements attesting to what transpired during their encounter.[29] The parties agree that Plaintiff, in

---

[19] R. Doc. 126-14 at 1, ¶¶4–5; R. Doc. 130-2 at 3, ¶¶4–5.
[20] R. Doc. 126-14 at 1, ¶¶4–5; R. Doc. 130-2 at 3, ¶¶4–5; R. Doc. 126-1 at 8. The parties dispute whether Plaintiff "complained in an agitated manner" and "was physically shaking with anger" during those discussions. R. Doc. 126-14 at 1, ¶¶4–5; R. Doc. 130-2 at 3, ¶¶4–5.
[21] R. Doc. 126-14 at 2, ¶¶7–8; R. Doc. 130-2 at 3, ¶¶7–8. *See also* R. Doc. 126-1 at 8–9; R. Doc. 130 at 3 ("In a brief meeting with Lissa Lyncker, Baird expressed his true opinion about her undeserved promotion to be his supervisor.").
[22] R. Doc. 126-14 at 2; R. Doc. 130-2 at 3–4. *See also* R. Doc. 126-1 at 8–9; R. Doc. 130 at 2–3.
[23] R. Doc. 126-1 at 8–9; R. Doc. 126-14 at 2. *See also* R. Doc. 130-2 at 3; R. Doc. 130 at 3.
[24] R. Doc. 126-1 at 8–9; R. Doc. 126-14 at 2; R. Doc. 126-4 at 4 (Statement of Lissa Lyncker).
[25] R. Doc. 130-2 at 3; R. Doc. 130 at 3.
[26] R. Doc. 130 at 3; R. Doc. 126-1 at 8–9; R. Doc. 126-4 at 2 (Declaration of Barry Obiol). *See also* R. Doc. 126-14 at 2; R. Doc. 130-2 at 3.
[27] *See* R. Doc. 126-4 at 2 (Declaration of Barry Obiol); *see also* R. Doc. 126-1 at 9.
[28] R. Doc. 130 at 3.
[29] R. Doc. 126-4 at 2 (Declaration of Barry Obiol). *See also* R. Doc. 126-14 at 2; R. Doc. 130-2 at 3.

his statement, admitted to telling Lyncker his opinion of her, delineating her shortcomings, and making it known that, in Plaintiff's opinion, Lyncker did not deserve the promotion.[30] Lyncker added, in her statement, that Plaintiff conveyed his views "angrily" and in a "hostile and aggressive tone" during the encounter,[31] which caused Lyncker fear and angst.[32] As stated above, Plaintiff disagrees that he acted angrily or with a hostile or aggressive tone.[33]

On April 26, 2012, Plaintiff testified as a witness on behalf of Casey Rowe, a co-worker of Plaintiff and Lyncker, in an EEO proceeding in which Rowe challenged Lyncker's selection for the supervisory position.[34] The Government does not dispute that Plaintiff testified in the EEO proceeding or that his testifying was a protected activity under Title VII.[35]

It is undisputed that on May 4, 2012 Plaintiff was given a Letter of Reprimand.[36] According to the Government, Lyncker's version of events from her encounter with Plaintiff was given credibility, because Plaintiff had a history of acting "angrily, rudely, and condescendingly to co-workers in the office."[37] Plaintiff disagrees that he has such a history.[38] Nevertheless, it is undisputed that, after his April 23, 2012 encounter with Lyncker, on May 4, 2012 Plaintiff was given a Letter of Reprimand, removed from a project on which he was the lead coordinator, and placed on administrative leave, with

---

[30] R. Doc. 126-14 at 2; R. Doc. 130-2 at 3.
[31] R. Doc. 126-14 at 2; R. Doc. 130-2 at 3.
[32] R. Doc. 126-4 at 2 (Declaration of Barry Obiol).
[33] R. Doc. 130-2 at 3.
[34] R. Doc. 130 at 3; R. Doc. 130-2 at 1.
[35] *See generally* R. Doc. 126-14; R. Doc. 126-1 at 24–25.
[36] R. Doc. 126-14 at 2, ¶10; R. Doc. 130-2 at 4, ¶10; R. Doc. 130-3. *See also* R. Doc. 126-5 at 3 (Declaration of Gary Goecke).
[37] R. Doc. 126-14 at 2. ¶¶28, 9.
[38] R. Doc. 130-2 at 2, ¶¶28, 9.

pay, for two-days.[39] It is also undisputed that, upon his return from leave on May 9, 2012, Plaintiff was reassigned to another section within the Office of Environment, as it was clear that Plaintiff and Lyncker could not work together.[40] Plaintiff was ultimately reassigned to the Biological and Social Sciences Section, which was headed by Stephanie Gambino.[41] The decision to reassign Plaintiff to this section was made on May 3, 2012, and communicated to Plaintiff on May 9th.[42] The parties agree that Plaintiff's reassignment was a lateral move with no effect on his salary.[43]

Plaintiff contends it is undisputed that, after he was reassigned to the Biological and Social Sciences Section in May 2012, he did not speak to Lyncker and had no contact with her at work whatsoever.[44] The Government has not pointed to any facts or produced any evidence to suggest otherwise. It is thus clear that, after being reassigned in May 2012, Plaintiff and Lyncker had no contact with one another at work.

It is undisputed that in September 2012 Lyncker began finding dog feces "purposefully left" in various locations throughout her property in New Orleans.[45] According to Lyncker, she continued to find dog feces on her property for months after September 2012, which Plaintiff does not dispute.[46] Lyncker eventually installed cameras, which produced "video and photographic evidence" showing Plaintiff's wife "purposefully" placing dog feces on Lyncker's property.[47] Based on this evidence, Lyncker

[39] R. Doc. 126-14 at 2–3, ¶¶10, 11; R. Doc. 126-2 at 5. *See also* R. Doc. 130-2 at 4, ¶¶10, 11; R. Doc. 130 at 3.
[40] R. Doc. 126-14 at 3, ¶13; R. Doc. 126-2 at 6; R. Doc. 130-2 at 4, ¶13. Plaintiff's transfer to the Biological and Social Sciences Section was a lateral transfer with no effect on his salary. R. Doc. 126-14 at 3, ¶13; R. Doc. 130-2 at 4, ¶13.
[41] R. Doc. 126-14 at 3, ¶15; R. Doc. 130-2 at 5, ¶15.
[42] R. Doc. 126-14 at 3, ¶15; R. Doc. 130-2 at 5, ¶15. *See also* R. Doc. 126-1 at 11; R. Doc. 126-2 at 6.
[43] R. Doc. 126-14 at 3, ¶13; R. Doc. 130-2 at 4, ¶13.
[44] R. Doc. 130 at 4; R. Doc. 130-2 at 6.
[45] R. Doc. 126-3 at 4 (Declaration of Joseph Christopher); R. Doc. 126-6 at 2 (Declaration of Warren Jones); R. Doc. 126-6 at 4 (Petition for Temporary Restraining Order, Injunction, and Other Relief).
[46] R. Doc. 126-6 at 4–5 (Petition for Temporary Restraining Order, Injunction, and Other Relief).
[47] R. Doc. 126-6 at 5 (Petition for Temporary Restraining Order, Injunction, and Other Relief).

and her husband filed a Petition for Temporary Restraining Order in state court against Plaintiff and his wife.[48]

On January 11, 2013, BOEM received a copy of the Petition for Temporary Restraining Order ("TRO"), as well as an Order granting the TRO.[49] The TRO barred Plaintiff from contacting Lyncker.[50] The parties agree that, soon after receiving the TRO on January 11, 2013, John Rodi, the Regional Director of BOEM for the Gulf of Mexico OCS Region, was informed that the TRO was not binding on BOEM.[51] Nevertheless, on January 18, 2013, Plaintiff was asked to pack his belongings and relocate from the sixth floor, where Lyncker also worked, to the second floor.[52] The relocation was completed by January 25, 2013.[53] Rodi testified that, in relocating Plaintiff, his "primary concern was to minimize the potential for any conflict between Plaintiff and Ms. Lyncker from occurring in the workplace in light of this TRO as well as the previously stated history of workplace conflict between" them.[54] Rodi testified that, despite knowing the agency was not bound by the TRO, he opted to relocate Plaintiff to avoid acting "contrary to the intention of the TRO."[55] It is undisputed that, in addition to being relocated, Plaintiff was subject to a number of restrictions, such as being prohibited from using the elevators and visiting the sixth floor.[56] Plaintiff was also prohibited from contacting Lyncker directly.[57]

---

[48] R. Doc. 126-6 at 4–5 (Petition for Temporary Restraining Order, Injunction, and Other Relief).
[49] R. Doc. 126-14 at 4, ¶18; R. Doc. 130-2 at 5, ¶18.
[50] *See* R. Doc. 126-6 at 4 (Petition for Temporary Restraining Order, Injunction, and Other Relief & TRO); R. Doc. 126-14 at 4, ¶19.
[51] R. Doc. 126-14 at 5, ¶23; R. Doc. 126-2 at 3 (Declaration of John Rodi).
[52] R. Doc. 126-1 at 13. *See also* R. Doc. 130 at 4–5. R. Doc. 126-14 at 5, ¶¶23–26; R. Doc. 130-2 at 6–7, ¶¶23–26.
[53] R. Doc. 126-3 at 5 (Declaration of Joseph Christopher).
[54] R. Doc. 126-2 at 3 (Declaration of John Rodi).
[55] R. Doc. 126-2 at 3 (Declaration of John Rodi). *See also* R. Doc. 126-14 at 5, ¶¶23–25.
[56] R. Doc. 130-2 at 6, ¶¶24–25. *See also* R. Doc. 126-14 at 5, ¶¶24–25.
[57] R. Doc. 126-14 at 5, ¶24.

The state court action in which the TRO was issued was dismissed on February 20, 2013.[58] It is undisputed that, after learning the suit requesting the TRO had been dismissed, Rodi did not immediately move Plaintiff back to the sixth floor.[59] The Government has offered undisputed evidence that Plaintiff admitted he liked working on the second floor, but that Plaintiff did not like the restrictions imposed on his movement throughout the building.[60] According to Rodi, Lyncker and her attorney requested that Plaintiff remain on the second floor despite the TRO suit having been dismissed.[61] Plaintiff disputes that Lyncker made such a request but offers no evidence in support.[62] Rodi testified that, as a result, he felt the need to "gather all relevant information" and "determine if there was any reasonable expectation of additional workplace conflict going forward" before making a decision on whether to move Plaintiff back to the sixth floor.[63] Rodi testified it took six weeks for him to gather the needed information, after which he made the decision to move Plaintiff back to the sixth floor.[64]

The parties agree that, on April 4, 2013, Plaintiff was informed that he could return to the sixth floor.[65] Plaintiff asserts that, after relocating back to the sixth floor, he was assigned a "dirty, smelly cubicle," which was different from the cubicle he previously occupied on the sixth floor.[66] The Government disputes that the cubicle was "dirty" or "smelly," but does agree that Plaintiff was not assigned the same cubicle he occupied

---

[58] R. Doc. 126-1 at 15. Apparently, no preliminary or permanent injunction was issued.
[59] R. Doc. 126-14 at 5–6, ¶26; R. Doc. 130-2 at 6–7, ¶26.
[60] R. Doc. 126-3 at 6, 8; R. Doc. 126-14 at 6, ¶27. In an email to Stephanie Gambino, Plaintiff stated: "At no time did I request that I be moved back to the 6th floor. I indicated that I like it on the 2nd floor, and would not mind staying, as long as there is no restriction on my movement within the building." R. Doc. 126-3 at 8.
[61] R. Doc. 126-14 at 5–6, ¶26. The dismissal of the state court lawsuit would, necessarily, dissolve the TRO.
[62] R. Doc. 130-2 at 6–7, ¶26.
[63] R. Doc. 126-2 at 3 (Declaration of John Rodi); R. Doc. 126-14 at 5–6, ¶26.
[64] R. Doc. 126-2 at 3 (Declaration of John Rodi); R. Doc. 126-14 at 5–6, ¶26.
[65] R. Doc. 126-14 at 6, ¶28; R. Doc. 130-2 at 7, ¶28.
[66] R. Doc. 130-2 at 7, ¶30.

before his relocation to the second floor.[67] The Government has offered Gambino's testimony that Plaintiff was assigned a different cubicle because she had altered the cubicle arrangement on the sixth floor to better group subject matter experts together.[68] Plaintiff disagrees, implying his placement in a "dirty, smelly" cubicle was retaliation,[69] but provides no evidence to refute Gambino's testimony on why she rearranged the cubicles.

In sum, Plaintiff claims, based on the foregoing, that BOEM subjected him to a retaliatory hostile work environment because he engaged in a protected activity, *i.e.*, testifying in the April 2012 EEO proceeding.[70] The acts of harassment which Plaintiff contends amounted to a hostile work environment include: his relocation from the sixth floor to the second floor; the restrictions placed on his movement; the delay in his return to the sixth floor; being intentionally misled by management regarding his return to the sixth floor; being assigned a "dirty, smelly" cubicle upon his return; the forwarding of private personnel matters to an unauthorized party; and derogatory comments made about him by management.[71] The Government has moved for summary judgment with respect to Plaintiff's retaliatory hostile work environment claim.

---

[67] R. Doc. 126-14 at 6, ¶30.
[68] R. Doc. 126-14 at 6, ¶¶29–30.
[69] R. Doc. 130-2 at 7, ¶¶30–31.
[70] Plaintiff also
[71] *See* R. Doc. 130 at 1–2 (referencing and incorporating the adverse actions alleged in Record Document 76, Plaintiff's Fourth Supplemental and Amending Complaint); *see also* R. Doc. 76 at 5–8. Plaintiff also claimed that his removal from a project on which he served as the lead coordinator was an act of harassment. This action occurred on May 4, 2012. Plaintiff filed an EEO complaint on July 29, 2013, more than 45 days later. R. Doc. 141 at 5 (Declaration of Bruce Baird). As the Court previously held, an employee must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). Failure to comply with this time limit generally bars a subsequent action in federal court. *See Pacheco v. Mineta*, 448 F.3d 783, 791 n.11 (5th Cir. 2006). Plaintiff argues his claims based on these actions are not time-barred because the continuing-violation doctrine applies. R. Doc. 130 at 15. The Government contends the claims are time-barred and that the continuing-violation doctrine does not apply. R. Doc. 126-1 at 22. *See infra* DISCUSSION, PART IV.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[72] "An issue is material if its resolution could affect the outcome of the action."[73] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[74] All reasonable inferences are drawn in favor of the non-moving party.[75] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[76]

## DISCUSSION

At this stage, Plaintiff's only remaining claim is his hostile work environment claim under Title VII.[77] In the present motion, the Government argues Plaintiff's hostile work environment claim fails and should be dismissed, as Plaintiff "cannot demonstrate either a causal connection between a protected activity and the employment decisions complained of herein or that the employment actions were severe or pervasive."[78] The Government also argues the claim is time-barred.[79]

---

[72] Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[73] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[74] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[75] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[76] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[77] *See* R. Doc. 76 at 10. The Court dismissed Plaintiff's retaliation claims in a prior ruling. *See* R. Doc. 57 at 7. Plaintiff's claim for failure to investigate complaints of hostile work environment were not exhausted at the administrative level and are thus not properly before this Court. R. Doc. 25-2 at 2–3.
[78] R. Doc. 126-1 at 5.
[79] R. Doc. 126-1 at 5.

## I. Retaliatory Hostile Work Environment: Elements of the Cause of Action

As an initial matter, the Court first notes that Plaintiff's claim is one for "retaliatory hostile work environment."[80] Such a cause of action has never been recognized by the Fifth Circuit.[81] The cause of action has, however, been adopted by the Second, Sixth, Seventh, Ninth, and Tenth Circuits.[82] Moreover, courts in this circuit have assumed a cause of action for retaliatory hostile work environment exists, absent guidance from the Fifth Circuit to the contrary.[83] As a result, this Court finds that Plaintiff may pursue a claim for retaliatory hostile work environment.

In those cases in which the cause of action has been accepted, courts have applied a modified form of the standard used in discriminatory hostile work environment claims.[84] This Court will do the same. As stated by the Fifth Circuit, the discriminatory hostile work environment standard is as follows:

> To make out a successful [discriminatory] hostile work environment claim, the plaintiff must show that (1) he is a member of a protected group; (2) he was a victim of harassment; (3) the harassment was based on [a protected characteristic]; (4) the harassment affected a "term, condition or privilege" of his employment (i.e., the harassment was so pervasive or severe as to alter his conditions of employment and create an abusive working environment); and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[85]

---

[80] *See generally* R. Doc. 76; R. Doc. 126-1 at 19; R. Doc. 130 at 2.

[81] *See, e.g.*, *Rowe v. Jewell*, 88 F. Supp. 3d 647, 671 (E.D. La. 2015); *Tejada v. Travis Assoc. for Blind*, No. A-12-CV-997-DAE, 2014 WL 2881450, at *3 (W.D. Tex. June 25, 2014); *Johnson v. Edwards*, No. 3:10CV73TSL-FKB, 2012 WL 399167, at *7 (S.D. Miss. Feb. 7, 2012); *Thomas v. City of Shreveport*, No. 06-1078, 2008 WL 4291211, at *11 (W.D. La. Sept. 15, 2008); *Perez v. Brown*, No. Civ.SA-97-CA-289-PMA, 1999 WL 33289707, at *7–8 (W.D. Tex. May 10, 1999).

[82] *See Bryan v. Chertoff*, 217 F. App'x 289, 293 n.3 (5th Cir. 2007) (citing *Ray v. Henderson*, 217 F.3d 1234, 1244–45 (9th Cir. 2000); *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000); *Richardson v. N.Y. State Dep't of Correctional Servs.*, 180 F.3d 426, 446 (2d Cir. 1999); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264–65 (10th Cir. 1998); *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996)).

[83] *See supra* note 78.

[84] *See, e.g.*, *Rowe v. Jewell*, 88 F. Supp. 3d 647, 671–73 (E.D. La. 2015).

[85] *Id.* (quoting *Hiner v. McHugh*, 546 F. App'x 401, 407–08 (5th Cir. 2013)). *See also, e.g.*, *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

In adopting that standard in the retaliatory hostile work environment context, courts have noted that, "[i]n the retaliation context, the first element would require proof that the plaintiff had engaged in protected activity, and the third element would require demonstration of a causal connection between the harassment and the protected activity."[86]

II. RETALIATORY HOSTILE WORK ENVIRONMENT: THE BURDEN

In Title VII cases resting on circumstantial evidence, such as the present case, the plaintiff first bears the burden of establishing a prima facie case.[87] Based on the modified standard delineated above, a prima facie case of retaliatory hostile work environment requires the plaintiff to show: (1) he engaged in a protected activity; (2) he was a victim of harassment; (3) a causal connection between the harassment and the protected activity; (4) the harassment affected a "term, condition or privilege" of his employment (*i.e.*, the harassment was so pervasive or severe as to alter his conditions of employment and create an abusive working environment); and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[88]

If the plaintiff succeeds in establishing a prima facie case, "the burden then shifts to the defendant-employer to articulate a legitimate, nonretaliatory reason" for its actions.[89] If the defendant-employer articulates such a reason, the burden at trial shifts back to the plaintiff to prove that the reasons provided by the defendant-employer were "a mere pretext for retaliation."[90] At trial, the plaintiff bears the burden of making the

---

[86] *See, e.g.*, *Tejada v. Travis Assoc. for Blind*, No. A-12-CV-997-DAE, 2014 WL 2881450, at *3 (W.D. Tex. June 25, 2014); *see also Rowe*, 88 F. Supp. 3d at 673.
[87] *E.g.*, *Johnson v. Edwards*, No. 3:10CV73TSL-FKB, 2012 WL 399167, at *4, 7 (S.D. Miss. Feb. 7, 2012).
[88] *See, e.g.*, *Rowe*, 88 F. Supp. 3d at 673; *see also Fallon v. Potter*, 277 F. App'x 422, 425 (5th Cir. 2008).
[89] *Fallon*, 277 F. App'x at 425 (quoting *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003)). *See also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).
[90] *Tejada*, 2014 WL 2881450, at *3. *See also Fallon*, 277 F. App'x at 425; *Gowesky*, 321 F.3d at 511.

ultimate, final showing that the defendant-employer subjected him to a retaliatory hostile work environment. But to survive a summary judgment motion, the plaintiff instead must show, as stated below, that there is a conflict in substantial evidence as to any one, or any number, of the elements of his retaliatory hostile work environment claim.

## III. Retaliatory Hostile Work Environment: Causation Analysis

In this case, the Government contends Plaintiff is unable to establish a prima facie case of retaliatory hostile work environment, as Plaintiff cannot show that the alleged employment actions were severe or pervasive or that a causal connection exists between the alleged harassment and Plaintiff's protected activity.[91] The Court will assume without deciding, for purposes of summary judgment, that Plaintiff has established a prima facie case of retaliatory hostile work environment.[92]

The Court will thus shift to the second element and assess whether the Government has offered legitimate, nonretaliatory reasons for its actions.[93] In support of its motion, the Government contends it took adverse actions against Plaintiff, not because of Plaintiff's participation in a protected activity—*i.e.*, his April 2012 testimony in an EEO proceeding—but rather due to the TRO Lyncker obtained against Plaintiff, the previously stated history of workplace conflict between them, management's concern for Lyncker's safety, as well as other workplace harmony and safety concerns.[94] The Government has produced substantial evidence to support its position that the restrictions placed on

---

[91] R. Doc. 126-1 at 24–26.
[92] *See, e.g.*, *Earle v. Aramark Corp.*, No. Civ.A. 303CV2960K, 2006 WL 832507, at *3 (N.D. Tex. Mar. 29, 2006) (assuming, without deciding, that plaintiff stated prima facie case of gender discrimination); *Garrett v. Constar, Inc.*, No. 3:97-VC-2575-R, 1999 WL 637222, at *1 (N.D. Tex. Aug. 20, 1999).
[93] *See, e.g.*, *Fallon*, 277 F. App'x at 425.
[94] R. Doc. 126-1 at 25. *See generally* R. Doc. 135; *see also* R. Doc. 126-2 at 3 (Declaration of John Rodi); R. Doc. 126-3 at 5 (Declaration of Joseph Christopher); R. Doc. 126-6 at 2 (Declaration of Warren Jones).

Plaintiff's movement, his delayed return to the sixth floor, and the other acts of retaliation alleged by Plaintiff,[95] were not triggered by Plaintiff's testimony in the EEO proceeding.

As the Government has offered legitimate, nonretaliatory reasons for its actions, it becomes Plaintiff's burden to show that the Government's proffered reasons were merely a pretext for creating an unlawful retaliatory hostile work environment.[96] As explained previously, a retaliatory hostile work environment claim requires Plaintiff to prove, *inter alia*, the presence of a causal connection between the alleged harassment and the protected activity.[97] At trial, Plaintiff would be required to prove that the protected activity was the "but-for" cause of the harassment.[98] To survive at the summary judgment stage, however, "a Title VII plaintiff, like plaintiffs in any other civil case, must [merely] show that there is a conflict in substantial evidence on this ultimate issue."[99] "Evidence is substantial if it is of such a quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."[100] Thus, at the summary judgment stage, the Court must determine whether there is a conflict in substantial evidence as to any one, or any number, of the elements of Plaintiff's retaliatory hostile work environment claim.

---

[95] *See supra* BACKGROUND; *see also* R. Doc. 130 at 1–2 (referencing and incorporating the adverse actions alleged in Record Document 76, Plaintiff's Fourth Supplemental and Amending Complaint); *see also* R. Doc. 76 at 5–8.

[96] *See, e.g., Fallon*, 277 F. App'x at 425.

[97] *See Rowe*, 88 F. Supp. 3d at 673; *see also Fallon v. Potter*, 277 F. App'x 422, 425 (5th Cir. 2008).

[98] *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 368–69 (5th Cir. 2013). *See also Fallon*, 277 F. App'x at 425;

[99] *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)) (internal quotation marks omitted).

[100] *Long*, 88 F.3d at 308 (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc)) (internal quotation marks omitted). *See also Steinhauser v. Comcorp of Tyler, Inc.*, 586 F. App'x 627, 629 n.8 (5th Cir. 2013); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012); *Jones v. FJC Sec. Servs., Inc.*, 40 F. Supp. 3d 840, 851–52 (S.D. Tex. 2014); *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 496 (M.D. La. 2012).

The protected activity in this case is Plaintiff's testimony in an EEO proceeding on April 26, 2012.[101] The acts of harassment began, at the earliest, on January 18, 2013, almost eight-and-a-half months later, when Plaintiff was relocated from the sixth floor to the second floor—though Plaintiff has admitted he liked working on the second floor—and his movement throughout the building was restricted.[102] Plaintiff also cites as harassment (1) the intentional delay of his return to the sixth floor in February 2013, approximately ten months after his testimony in the EEO proceeding;[103] and (2) upon his return to the sixth floor on April 4, 2013, his assignment to a cubicle which was "dirty" and "smelly."[104]

The temporal proximity between an employee's protected activity and adverse actions taken against that employee is useful in determining whether a causal link is present.[105] "The Fifth Circuit has found that a time lapse of up to four months may be sufficiently close, but that a five month lapse is not close enough without other evidence."[106] In the present case, there is an approximate eight-and-a-half month lapse between Plaintiff's EEO testimony and his movement to the second floor and the restrictions placed on his movement throughout the building. Further, there is approximately a ten month lapse between Plaintiff's testimony in the EEO proceeding and the delay in his sixth-floor return, and an almost twelve month lapse between his EEO testimony and his assignment to a cubicle he described as "dirty" and "smelly." Therefore,

---

[101] R. Doc. 130 at 3; R. Doc. 130-2 at 1.
[102] R. Doc. 76. *See also* R. Doc. 130 at 2; R. Doc. 141 at 2–3 (Declaration of Bruce Baird).
[103] R. Doc. 130 at 5; R. Doc. 141 at 4 (Declaration of Bruce Baird).
[104] R. Doc. 130-2 at 7; R. Doc. 141 at 5 (Declaration of Bruce Baird).
[105] *See, e.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007); *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 507–08 (5th Cir. 1994).
[106] *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001), and *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002).

temporal proximity is not sufficient in this case to imply a causal connection between the acts of harassment alleged and Plaintiff's protected activity.

Plaintiff argues rather extensively that the Government's stated justifications for the adverse actions, such as the TRO obtained by Lyncker and BOEM's desire to respect it, are a mere pretext.[107] But Plaintiff fails to offer any competent summary judgment evidence in support of his position. For example, Plaintiff has alleged that the TRO was not binding on BOEM, that BOEM officials knew the TRO was not binding on the agency, and that the adverse actions continued even after the TRO suit was dismissed.[108] The Government does not dispute that the TRO was not binding on the agency. Plaintiff argues this is evidence the TRO was not the true reason behind his "exile" within the agency and that the Government's arguments to the contrary are pretextual. However, Plaintiff has offered only conclusory assertions that the reasons given by the Government are untrue.

The Government has, on the other hand, submitted competent summary judgment evidence which shows that, although the TRO was not binding on the agency, BOEM officials made a reasonable determination to honor its terms and intent.[109] The Government has produced evidence that the restrictions on Plaintiff were put into effect to avoid acting "contrary to the intention of the TRO,"[110] not to retaliate against Plaintiff for testifying in the EEO proceeding. Rodi testified that, in relocating Plaintiff, his "primary concern was to minimize the potential for any conflict between Plaintiff and Ms. Lyncker from occurring in the workplace in light of this TRO as well as the previously

[107] R. Doc. 130 at 2, 4–5, 6; R. Doc. 130-2 at 1–2.
[108] R. Doc. 130 at 2, 4–5, 6; R. Doc. 130-2 at 6–7.
[109] R. Doc. 126-2 at 3 (Declaration of John Rodi). *See also* R. Doc. 126-14 at 5, ¶¶23–25.
[110] R. Doc. 126-2 at 3 (Declaration of John Rodi). *See also* R. Doc. 126-14 at 5, ¶¶23–25; R. Doc. 126-3 at 5 (Declaration of Joseph Christopher); R. Doc. 126-6 at 2–3 (Declaration of Warren Jones).

stated history of workplace conflict between" them.[111] Rodi testified that, despite knowing the agency was not bound by the TRO, he opted to relocate Plaintiff to avoid acting "contrary to the intention of the TRO."[112]Plaintiff has offered nothing to contradict the Government's evidence, other than a temporal connection of, at the least, eight-and-a-half months, which, without more, is not enough.

The summary judgment record is also devoid of any evidence BOEM officials involved in the allegedly harassing actions even knew Plaintiff had testified in the April 2012 EEO proceeding.[113] Plaintiff contends that several BOEM officials, including Rodi, knew of Plaintiff's protected activity,[114] but Plaintiff does not cite any evidence to support his assertion. Instead, Plaintiff merely surmises those individuals knew of his protected activity and acted with the intention of retaliating against Plaintiff for his participation.[115] This is not enough to raise a genuine dispute as to whether BOEM officials knew Plaintiff engaged in a protected activity.

In sum, Plaintiff has altogether failed to raise any genuine issue of material fact with respect to the causation element of his retaliatory hostile work environment claim. Plaintiff engaged in a protected activity when he testified in an EEO proceeding in April 2012, but Plaintiff has failed to offer any evidence creating a genuine issue of material fact as to whether the adverse actions he suffered were connected to or caused by the protected activity in which he engaged.[116] As a result, based on the summary judgment record, the

---

[111] R. Doc. 126-2 at 3 (Declaration of John Rodi).
[112] R. Doc. 126-2 at 3 (Declaration of John Rodi). *See also* R. Doc. 126-14 at 5, ¶¶23–25.
[113] *See generally* R. Doc. 126-2 (Declaration of John Rodi); R. Doc. 126-3 (Declaration of Joseph Christopher); R. Doc. 126-4 (Declaration of Barry Obiol); R. Doc. 126-5 (Declaration of Gary Goecke); R. Doc. 126-6 (Declaration of Warren Jones).
[114] *See* R. Doc. 130 at 10; *see also* R. Doc. 135 at 6.
[115] R. Doc. 130 at 10.
[116] Plaintiff engaged in extensive discovery against the Defendants in this action with respect to his Title VII claims, and against the same Defendants with respect to claims under the Freedom of Information Act. He certainly had the opportunity to discover the evidence, if it existed, to support his contentions.

Court finds that reasonable, fair-minded persons could not conclude that the allegedly harassing acts of which Plaintiff complains were causally connected to his testimony in the April 2012 EEO proceeding.

IV. RETALIATORY HOSTILE WORK ENVIRONMENT: THE CONTINUING VIOLATION DOCTRINE

The Government also argues Plaintiff's claims predicated on pre-June 14, 2013 conduct are time-barred.[117] As stated above, under 29 C.F.R. § 1614.105(a)(1), an employee must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." Failure to comply with this time limit generally bars a subsequent action in federal court.[118] Plaintiff filed an EEO complaint on July 29, 2013,[119] which marked 45 days from June 14th. Plaintiff does not disagree that his claims predicated on pre-June 14, 2013 conduct were not timely exhausted before an EEO counselor but argues those claims should not be time-barred under the continuing-violation doctrine.[120]

"The continuing violation doctrine is designed to accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered timely."[121] The continuing-violation doctrine does not automatically apply in hostile work environment cases.[122] The plaintiff-employee bears the burden of showing that an "organized scheme led to and included the present violation."[123] "[T]he continuing violation theory requires the same

[117] R. Doc. 126-1 at 22.
[118] *See Pacheco v. Mineta*, 448 F.3d 783, 791 n.11 (5th Cir. 2006).
[119] R. Doc. 141 at 5 (Declaration of Bruce Baird).
[120] R. Doc. 130 at 15.
[121] *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351–52 (5th Cir. 2001) (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999)) (internal quotation marks omitted).
[122] *Id.* at 353.
[123] *Id.*

type of discriminatory acts to occur both inside and outside the limitations period, such that a valid connection exists between them."[124] Allegedly discriminatory actions that are "discrete, isolated, and completed . . . must be regarded as individual violations."[125]

Plaintiff has offered no evidence that the acts of harassment he has alleged amount to a "pattern or policy" of retaliation or were an "organized scheme." It is clear from the record that the acts of harassment alleged in this case were discrete and isolated, having occurred separately over almost twelve months. Plaintiff's argument that the continuing-violation doctrine applies and that his pre-June 14, 2013 claims are not time-barred is without merit and must be rejected.

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the Government's motion for summary judgment be and hereby is **GRANTED**.

**New Orleans, Louisiana, this 7th day of January, 2016.**

_____________________________
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

[124] *Id.* at 352–53 (quoting *Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000).
[125] *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983) (citing *Tarvesian v. Carr Division of TRW, Inc.*, 407 F. Supp. 336, 339 (D. Mass. 1976)).